STATE EX REL. HARRIS, PROSECUTING ATTORNEY ETC., ET AL. *v.* MUTSCHLER ET AL.

[No. 28,993. Filed November 5, 1953.]

582

*Seth E. Rowdabaugh,* of Warsaw, and *Robert B. Hartzog,* of Goshen, for appellants.

*Albert B. Chipman,* of Plymouth, *Russell D. Bontrager,* of Elkhart and *Joseph W. Kindig,* of Nappanee, for appellees.

EMMERT, J.—This is an appeal from a judgment for appellees on an information in the nature of quo warranto, brought by the Prosecuting Attorney of the 54th Judicial Circuit. The information charged in substance that the School City of Nappanee and Scott School Township of Kosciusko County had failed to effect a *de jure* consolidation of schools under Ch. 123 of the 1947 Acts, §28-5901 *et seq.,* Burns' 1948 Replacement, or under Ch. 268 of the 1949 Acts, §§28-5901 to 28-5911, Burns' 1948 Replacement (Supp.). The prayer sought to enjoin the members of the School Board for "Nappanee Community Schools" from using such name as a corporation and from performing any of the functions of a corporation, and sought a declaratory judgment declaring that no consolidation had ever been made, and to declare null and void all of the acts of the School Board of the Nappanee Community Schools, and to enjoin the making of further appointments of members of the School Board, and to declare all appointments thereto to be null and void.

On September 10, 1952, the Trustee and Advisory Board of Scott Township filed an answer admitting the allegations in each rhetorical paragraph of the information, and prayed for a judgment for the plaintiff.

On June 10, 1952, the Mayor and members of the City Council of Nappanee filed a demurrer to the amended information on the ground the court had no jurisdiction of the subject-matter, and that the information did not state facts sufficient to constitute a cause of action. On June 4, 1952, the appellees Mutschler, Elder, Wright, Anglin, Price and Coppes filed a similar demurrer to the amended information.

The trial court sustained both demurrers, and upon appellant's refusal to amend, entered a judgment for the demurring appellees. It also entered a judgment against the appellant relator on the answer filed by the Trustee and Advisory Board of Scott Township. None of the parties here complain as to the form of the judgment, or the failure of the trial court to enter a declaratory judgment as prayed in the information.

The amended information in substance charged that on May 26, 1947, the Trustee and Advisory Board of Scott Township met with the School Trustees of the School City of Nappanee, and adopted a resolution declaring an intention to consolidate the school corporations; that notice of the adoption of the resolution was published in the Warsaw Daily Times, but no notice was published in the Milford Mail, which was the newspaper nearest Scott Township; that the notice was directed to the legal voters of Scott Township and not to the legal voters of Scott School Township; that more than fifty legal voters residing in said township petitioned for an election; that the Trustee and Advisory Board of Scott Township fixed Monday, June 30, 1947, as the day for an election, notice thereof being published in the Warsaw Daily Times, but no notice was published in the Milford Mail; that said notice was addressed to the legal voters of Scott Township, and was not addressed to the legal voters of Scott School Township;

that an election was held and the Trustee and Advisory Board, acting as a board of election commissioners, certified that the majority of the legal votes cast at said election were in favor of the consolidation; that the joint resolution declaring the intention to consolidate did not set out the name of the proposed new school district, the number of members of the School Board or the manner in which they should be selected, nor the limitations on residence, terms of office or other qualifications for members of said Board; that the ballots used on said election did not contain any statement as to the manner or method for the selection of the School Board, nor any statement of the provisions of any resolution in regard thereto; that the joint resolution did not state whether the consolidated school should be under the direction of the County Superintendent or of a Superintendent of Schools, or under the direction of a superintendent employed by the school board.

The amended information further averred that on July 5, 1947, the Trustees of the School City of Nappanee and the Trustee and Advisory Board of Scott Township, in a joint meeting, adopted a resolution declaring the School City of Nappanee and Scott School Township consolidated, to become effective August 1, 1947, and adopted for said new school corporation the name of "Nappanee Community Schools"; that said resolution provided that the control and management of said new school corporation should be under a School Board consisting of five members, three to be appointed by the Common Council of the City of Nappanee, one to be the Trustee of Scott School Township, one to be appointed by the Advisory Board of said Township; that their terms should be for four years and their compensation should be $100.00 per year; that the direction of said consolidated school should be under a superintendent to be selected by said School Board; and

that thereafter the new School Board met and attempted to organize, and adopted certain resolutions and undertook the operation of said municipal corporation.

The amended information charged that the proceedings for the consolidation and the organization of said Nappanee Community Schools, a municipal corporation, were illegal and void in this:

"(a) The Resolution declaring an intention to consolidate contained no provisions regarding the election or appointment of a School Board, the number of members thereof or how they should be elected or appointed, their residence, term of office or other qualifications.

(b) The ballots provided for said election and voted in said election provided no method for the election or appointment of a School Board.

(c) The resolution declaring an intention to consolidate did not set out the names of the proposed School District, or whether it should be under the direction of the County Superintendant of Schools, or of a Superintendant of Schools selected and employed by the proposed School Board.

(d) No resolution declaring an intention to consolidate the School Corporation of Scott School Township, Kosciusko County, Indiana, and of the School City of Nappanee of Elkhart County, Indiana, was ever adopted by the Trustee and Advisory Board of Scott School Township of Kosciusko County, Indiana.

(e) No published notice of adoption of said resolution of intention to consolidate was ever given the legal voters of Scott School Township of Kosciusko County, Indiana, and no published notice thereof was given by the Trustee and Advisory Board of said Scott School Township.

(f) No published notice of the time and place of an election to determine whether a majority of the legal voters of Scott School Township, Kosciusko County, Indiana were in favor of such consolidation were given by the Trustee and Advisory Board of Scott School Township of Kosciusko County, Indiana, nor to the legal voters of Scott School Township, Kosciusko County, Indiana.

(g)   The Trustees of the said School City of Nappanee and the Trustee and Advisory Board of the said Scott Township had acquired no authority or power under the laws of the State of Indiana to adopt any effective resolution as adopted by them in meeting on the 5th day of July, 1947 and as set out in rhetorical paragraph 17 above, and all of the Acts of the parties, resolutions adopted, authority assumed and powers exercised by said persons at said meeting were illegal and void.

(h)   The Act of setting salaries for the members of said illegal School Board for 'Nappanee Community Schools', was void and the payment of such salaries, which have been paid from tax monies collected upon persons and property assessed in said Scott Township, was and continue to be illegal and void.

. . . .

(k)   The Act of the General Assembly of the State of Indiana, entitled 'An Act concerning consolidation of two or more school corporations for school purposes' approved March 7, 1947 and being Chapter 123 of the Acts of the General Assembly of the State of Indiana for the year 1947, and being the Act under which the consolidation of said school corporations was purported to be had, in its form and as unamended as it existed during the periods of time complained of, was and is void for uncertainty."

The amended information further charged that there was a second attempt to incorporate the same consolidated school corporation after the effective date of Ch. 268 of the 1949 Acts, which had amended certain provisions of the first consolidation Act (Ch. 123 of the 1947 Acts) ; that an election was held to determine said question on July 19, 1949, but that at said election 122 men and women who were legal voters were illegally prevented from voting on the ground they were not registered voters of Scott Township, and that of the 122 legal voters excluded, 110 would have voted against consolidation, and the consolidation would have been

thus defeated; and that the Township Trustee and Advisory Board of Scott School Township and the school trustees of the City of Nappanee in a joint meeting held July 20, 1949, had no authority to declare by resolution that a consolidation had been effected, the new corporation to be known as "Nappanee Community Schools."

On August 18, 1953, the appellants filed with this court a verified petition for the issuance of a restraining order and a temporary injunction to restrain the trustees and members of the Advisory Board of Scott Township, the officers of the Nappanee Community Schools, and the mayor and the city council of Nappanee, from contracting for and carrying out contracts for the construction of a school building for Nappanee Community Schools. We issued a restraining order without notice, and on the appellees' verified motion for dissolution of the restraining order, we dissolved the restraining order, and then refused to issue the temporary injunction. The correctness of our ruling in this matter was not argued by appellants when the main cause was argued. There is no doubt as to our authority to issue restraining orders and injunctions to protect our Appellate jurisdiction. Flanagan, Wiltrout & Hamilton, Indiana Trial and Appellate Practice, §2955; Ewbank, Manual of Practice (2d Ed.), §259-§261 inclusive; §3-2101, Burns' 1946 Replacement. The transcript was filed here December 1, 1952. If the appellants are to obtain the extraordinary relief asked of this court by injunction they should be required to seek this aid with due diligence. In the appeal at bar, we believe this was barred by laches, which is defined "to be an unreasonable delay; or the neglect to do at the proper time what by law or duty ought to be done; or the failure to prosecute a claim within a reasonable and proper period. What is laches in one case might

not be laches in another case. The question of laches is one to be determined by the court in the exercise of its sound discretion. *Ryason* v. *Dunten* (1905), 164 Ind. 85, 73 N. E. 74; *Patterson* v. *State Bank, etc.* (1913), 55 Ind. App. 331, 102 N. E. 880." *Burton* v. *Ryan* (1929), 88 Ind. App. 549, 553, 165 N. E. 260.

It would unduly extend this opinion to set forth in detail all the provisions of Ch. 123 of the 1947 Acts and Ch. 268 of the 1949 Acts. We do not believe that these Acts are unconstitutional or void for uncertainty.

Section 1 of Article 8 of the Constitution of Indiana makes it the duty of the General Assembly "to provide, by law, for a general and uniform system of Common Schools . . ."

"The people of Indiana have translated into a fundamental constitutional postulate the belief that the general diffusion of knowledge and learning throughout a community is essential to the preservation of free government. And in harmony with this constitutional postulate the Constitution recognizes that the business of education is a governmental function and makes public education a function of state government as distinguished from local government. §1, Art. VIII, Indiana Constitution. 'It was evidently the intention of the framers of the Constitution to place the common school system under the direct control and supervision of the state, and make it a quasi-department of the state government'; *(Greencastle Twp.* v. *Black* [1854], 5 Ind. 557, 563) 'a centralized and not a localized form of school government.' *State ex rel. Warren et al.* v. *Ogan* (1902), 159 Ind. 119, 121, 63 N. E. 227." *State ex rel. Osborn* v. *Eddington* (1935), 208 Ind. 160, 164, 195 N. E. 92.

Under the provisions of §1 of Article 8 of the Constitution it was within the constitutional power of the

Legislature to have effected a consolidation of these two school corporations without notice to the voters thereof, and without any referendum by way of an election. Section 4 of Ch. 1 of the 1865 Acts, §28-2402, Burns' 1948 Replacement, did not require notice or consent by the voters for the creation of school corporations of the state.[1] There are no constitutional requirements in the Indiana Constitution, nor by any of the decisions of the Supreme Court of the United States on procedural due process under the Fourteenth Amendment, that require notice and a hearing, or notice and election, or consent for the creation of such school corporations. If we were deciding a case where the Legislature had delegated the right to create a special assessment district for drainage, road, or other public purpose, different issues would be presented. See *Board of Commissioners* v. *Falk* (1943), 221 Ind. 376, 383, 47 N. E. 2d 320, and cases therein cited.

Judge Cooley, in his treatise on Constitutional Limitations, correctly declared the rule for legalizing acts as follows: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed

---

1. "Each civil township and each incorporated town or city in the several counties of the state is hereby declared a distinct municipal corporation for school purposes, by the name and style of the civil township, town or city corporation respectively, and by such name may contract and be contracted with, sue and be sued, in any court having competent jurisdiction; and the trustees of such township, and the trustees provided for in the next section of this act, shall, for their township, town or city be school trustees, and perform the duties of clerk and treasurer for school purposes." Section 28-2402, Burns' 1948 Replacement, Acts 1865, Ch. 1, §4, p. 3.

"They are involuntary corporations, organized not for the purpose of profit or gain but solely for the public benefit, and have only such limited powers as were deemed necessary for that purpose. Such corporations are but the agents of the State, for the sole purpose of administering the State system of public education." *Freel* v. *The School City of Crawfordsville* (1895), 142 Ind. 27, 28, 41 N. E. 312.

with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." II Cooley, Constitutional Limitations (8th Ed.), pp. 775, 776. This court has consistently applied and followed this test. *Yelton* v. *Plantz* (1950), 228 Ind. 79, 84, 89 N. E. 2d 540; *Follett* v. *Sheldon, Treas.* (1924), 195 Ind. 510, 539, 144 N. E. 867; *Seitz* v. *Mosier* (1922), 192 Ind. 416, 136 N. E. 840; *Board, etc.* v. *Spangler* (1902), 159 Ind. 575, 65 N. E. 743; *Schneck* v. *City of Jeffersonville* (1898), 152 Ind. 204, 52 N. E. 212; *Johnson* v. *Board, etc.* (1886), 107 Ind. 15, 8 N. E. 1; *Sithin* v. *Board of Commrs. of Shelby County* (1879), 66 Ind. 109. Notice and election could have been dispensed with under Ch. 123 of the 1947 Acts and the Act amending it (Ch. 268 of the 1949 Acts), had the Legislature in its discretion seen fit to do so.

Nor are we able to agree with the appellants' contention that Ch. 204 of the 1949 Acts, and §12 of Ch. 268 of the 1949 Acts, which legalized defective consolidated school corporations, were special legislation. Each is general in its scope and applies to a reasonable classification. Curative statutes are to be liberally construed. *Dreves* v. *Oslo School Twp. of Elkhart* (1940), 217 Ind. 388, 394, 28 N. E. 2d 252, 128 A. L. R. 1405. Furthermore, our latest decision on legalizing acts holds that they are not within the constitutional prohibitions against special legislation.[2]

2. "A curative statute from its very nature and because of the purpose to be accomplished by it, must necessarily be based solely on conditions already existing. The object of such a stat-

The defect, if there was a defect in the organization of the consolidated school corporation by reason of the fact that the Township Trustee and the Advisory Board of Scott Civil Township may have been acting as officers of the civil township rather than as officers of the school township, was cured by §1 of Ch. 204 of the 1949 Acts. The first election was also validated. Any defects in the acts done by the officers as school trustees of the school corporation were legalized by §12 of Ch. 268 of the 1949 Acts. It is our opinion that on and after March 9, 1949, the effective date of Ch. 204 of the 1949 Acts, the Nappanee Community Schools was and has been a *de jure* municipal school corporation. The corporation was not reincorporated by any of the proceedings had in 1949 either by resolutions, notice of election, or election. Such proceedings in no way affected the *de jure* existence of the corporation which still continues.

Judgment affirmed.

Gilkison, J., not participating.

NOTE.—Reported in 115 N. E. 2d 206.

---

ute is to effect a remedy for present conditions. Due to this fact, curative acts are properly held not to come within the constitutional inhibition against special legislation. 50 Am. Jur., Statutes, §61; *San Pedro, L. R. & S. L. R. Co.* v. *Hamilton* (1911), 161 Cal. 610, 119 Pac. 1073; *The State* v. *Pauley* (1910), 83 Kan. 456, 112 Pac. 141. For further citation of authorities see Note 1 to the above cited section of American Jurisprudence. We are further fortified in this conclusion by the fact that this has been the construction of this particular section of our Constitution by our legislature for many years; this fact alone is persuasive. The construction placed on this section by a coordinate branch of our government should not be ignored by us." *Yelton* v. *Plantz* (1950), 228 Ind. 79, 88, 89, 89 N. E. 2d 545.